# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

AMIRA A. SILIC, )
)
      Plaintiff, )
)   Case No. 12 CV 6557
v. )
)
BBS TRUCKING, INC., )
)
      Defendant. )

## DECLARATION OF SLAVICA KRNETA

I, Slavica Krneta, pursuant to 28 USC § 1746, do hereby declare under penalty of perjury that the following statement is true and correct and if called upon to testify, my testimony would be as follows:

1.     I am employed by BBS Trucking, Inc. and was employed as a dispatcher for BBS from approximately March 2011 through approximately March 2013. Since then I have been employed as a dispatcher and office manager for BBS. I am authorized to submit this Declaration for BBS. The statements made herein are made upon my personal knowledge.

2.     Based on my work experience with BBS, I am familiar with the employment practices of BBS as well as the manner in which BBS contracts with owner operators to lease the owner operators' equipment to operate under BBS's motor carrier authority.

3.     Since I started at BBS, BBS has employed office staff of no more than eight people to manage and perform the day to day operations of BBS. I was one of these employees and in the year 2011 until November 2011, Plaintiff was one of these employees.

4.     BBS paid me by withholding taxes, social security and other withholdings, and BBS issued me a W-2 each year which reflected wages paid in 2011 and 2012.

1



5.     Since I have been employed at BBS, each of the independent contractor owner-operators contracted by BBS has leased its own vehicle to BBS to operate under BBS's Federal motor carrier authority.

6.     Attached hereto as Exhibit "1" is a true and correct copy of an example Lease Agreement entered into by BBS with owner operator corporations and individuals in 2011 that is identical to the Lease Agreement entered into with other owner-operators.

7.     During the time I have worked for BBS, BBS has entered into lease contracts with owner operator corporations and sole proprietors who have leased BBS their equipment and driving services to operate under BBS's authority.

8.     Each owner-operator corporation and sole proprietor that contracted with BBS is responsible for paying their own expenses associated with the ownership of their own vehicles.

9.     Each owner-operator that contracted to lease their trucks to BBS is and was free to choose when they work and is entitled to refuse assignments if they wished.

10.     While BBS's customers necessarily provide the origin and destination for each shipment, each independent contractor is and was entitled to choose his or her own routes in transporting the shipments from origin to destination.

11.     No driver is required to wear any sort of uniform in providing services under the driver's lease agreement with BBS.

12.     Owner-operators contracted with BBS perform their services on the road and no driver is required to physically report for duty at BBS's location in Addison, Illinois.

13.     No owner-operator or driver working for an owner-operator is provided benefits by BBS.

14. For each owner-operator with which BBS contracts, BBS issues a 1099 regardless of whether the owner-operator is an individual or corporation.

15. BBS does not withhold any Federal taxes, social security or other withholdings from owner-operator individuals or corporations. Owner-operators are required to fulfill their own tax and FICA withholding requirements.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 26th day of June, 2013.

_____

Slavica Krneta

# BBS TRUCKING INC
420 WEST STONE ROAD
UNIT E-2
VILLA PARK, IL 60181

## LEASE AGREEMENT

### I. AGREEMENT

For and in consideration of the compensation set for in section III of this agreement __COSIC EXPRESS INC__, hereinafter called INDEPENDENT CONTRACTOR agrees to contract to BBS TRUCKING INC. hereinafter called CARRIER, the equipment described in section XIV. Together with qualified drivers, and CARRIER agrees to contract loading and transporting freight In witness whereof CARRIER and INDEPENDENT CONTRACTOR hereby enter into this Agreement on __02|09|2011__ which shall be effective. Date here of and agree to be bound by all terms there of as set forth in the attached schedule, which is made part hereof the same as if it was fully set forth herein. The terms of this Agreement shall be automatically renewed for ONE year, unless party shall, least thirty (30) days prior to the expiration of any term, give written notice of the intention not to renew Agreement.

_____
Signature of Independent Contractor

_____
Signature of Carrier Agent

### II. IDENTIFICATION OF INDEPENDENT CONTRACTOR

NAME: Nikola Cosic

BOING BUSINESSES (CORPORATION NAME): Cosic Express Inc

SS# or FEDERAL ID#:

ADDRESS: 546 Pullman Rd # 302

CITY, STATE, ZIP: Romeoville, IL 60446

HOME PHONE:

MOBIL PHONE: 708 - 277 - 7218

Initial N.C.



EXHIBIT
1

Blumberg No. 5119

## III. SCHEDULE OF COMPENSATION:

Carrier agrees to pay 88% of gross receipts of each of each load, minus applicable escrow deductions, cargo and liability insurance deduction, agreed upon damage and payments, and fuel card payments.

1) CARRIER agrees to pay, and INDEPENDENT CONTRACTOR agrees to accept as full and complete payment for use of said equipment and for performance of obligations accepted by INDEPENDENT CONTRACTOR UNDER THIS Agreement, compensation as set forth in Section III above. CARRIER shall settle with INDEPENDENT CONTRACTOR of the Bill of Lading, signed delivery receipts, driver log books for the complete trip, original fuel invoices are also due at this time if the INDEPENDENT CONTRACTOR chooses the Fuel Tax accounting service below. ALL applicable paperwork must be submitted to CARRIER no later than close of business (5.00 p.m. CST) the preceding Monday in order to be paid 11 days later on Friday.

If paperwork is not complete, INDEPENDENT CONTRACTOR will be paid the following week on Friday.

2) Fuel tax accounting services will be available to INDEPENDENT CONTRACTOR, if he so chooses and fees will be paid to the Company providing said service. If not all quarterly fuel tax payments remain the full responsibility of INDEPENDENT CONTRACTOR.

a) I choose to file my own quarterly Fuel Tax Returns.

b) I choose to use the Fuel Tax reporting service chosen by CARRIER.

3) It is agreed that an "escrow" fund is set up at the time of the execution of the agreement. INDEPENDENT CONTRACTOR authorizes CARRIER to withhold hundred dollars ($100) per week from any settlements and to retain it in the escrow funds to the maximum of $1500 if for any reason CARRIER does not withhold $100 in given week, INDEPENDENT CONTRACTOR authorizes CARRIER withhold (in subsequent weeks) any additional funds necessary to make up for such deficiency . If INDEPENDENT CONTRACTOR does not keep his Equipment operating for the full term of the agreement the minimum fee paid to any regulating agency to certify such equipment, or drivers may be deducted from sums held in escrow. All escrow funds may be held for period of 45 days after termination of this Agreement, to insure payment, of INDEPENDENT CONTRACTOR'S obligations, including but not limited to fuel taxes, cargo claims liability claims advances, fuel card advances, or any other cost, which are the sole responsibility of the INDEPENDENT CONTRACTOR. Should any claim not be resolved at the end of said 45 days, the CARRIER may retain the escrow funds until claim is closed. If CARRIER retains any escrow funds beyond 45 days, the CARRIER shall release any remaining funds within thirty (30) days of the closing of the remaining claims. The CARRIER shall provide INDEPENDENT CONTRACTOR with an accounting of any transaction involving the escrow account upon request of the INDEPENDENT CONTRACTOR.

4) In any case where the INDEPENDENT CONTRACTOR has secured an advance of any kind from CARRIER, including but not limited to fuel lubricants, safety equipment, tires, tractor and trailer parts, fines and penalties, operating authorities, licenses permits, transfer charges, tolls or any insurance deductions authorized by INDEPENDENT CONTRACTOR. CARRIER shall be authorized to deduct the amount of such advance from any trip settlement, escrow settlement or other moneys due. If such moneys are insufficient to cover the sum due CARRIER from INDEPENDENT CONTRACTOR will on demand pay to CARRIER all sums remaining due CARRIER. CARRIER shall furnish a written explanation and itemization of all such deductions due upon demand.

5) If INDEPENDENT CONTRACTOR does not notify company whit 30 days prior to terminating agreement, company reserves right to hold all money owed to contractor.

6) Company reserves right to terminate any agreement at any time for NO GIVEN REASON.

Initial. N. C.

## IV RELATIONSHIP OF PARTIES

1) The parties intend to create by the lease a relationship of CARRIER and INDEPENDENT CONTRACTOR, and not that of employer and employee. Neither INDEPENDENT CONTRACTOR nor its agent is to be considered employees of the lease at any time for any purpose. INDEPENDENT CONTRACTOR shall operate equipment covered by the Agreement or furnish sufficient employees to operate said equipment. Any employees furnished by INDEPENDENT CONTRACTOR shall be his employees, shall by hired, directed, paid, controlled solely by INDEPENDENT CONTRACTOR.

2) The parties intend to create by the lease a relationship of CARRIER and INDEPENDENT CONTRACTOR, and not that of employer and employee. Neither the INDEPENDENT CONTRACTOR nor its agent are to be considered employees of the lease at any time for any purpose.

3) INDEPENDENT CONTRACTOR shall operate equipment covered by the Agreement or furnish sufficient employees to operate said equipment. Any employees furnished by the INDEPENDENT CONTRACTOR shall be his employees, shall by hired, directed, paid, controlled solely by INDEPENDENT CONTRACTOR.INDEPENDENT CONTRACTOR represent that any employees furnished by him are competent , reliable, physically fit and are familiar with State and Federal motor carrier safety rules, lows and regulations. To the extent requited by applicable law. INDEPENDENT CONTRACTOR shall be responsible for withholding and remitting to proper authorities all payroll taxes for his employees.

4) CARRIER will provide a Statement of Earnings to INDEPENDENT CONTRACTOR showing annual compensation and report same to Internal Revenue Services on IRS Form 1099.

5) INDEPENDENT CONTRACTOR may temporarily remove leased equipment from operation of the CARRIER under this Lease for periods of less than 30 days, subject to notification of and approval by CARRIED. During such periods, INDEPENDENT CONTRACTOR shall remove CARRIER identification placards, cards and fuel permits and shall not operate under the authority of the CARRIER.

6) The parties further intend that the relationship created by this company in all respects with the regulations of the I.C.C. governing the Lease and interchange of vehicles by authorized carriers.

7) This CONTRACT made between INDEPENDENT CONTRACTOR and B.B.S. TRUCKING INC. will perform trucking services of any kind and that the services will be done without supervision. Also INDEPENDENT CONTRACTOR agrees to be paid on trip basic and after each job is completed. In addition to the above INDEPENDENT CONTRACTOR agrees that compensation received will not be subject to withholding of federal and state income tax and social security tax. All drivers who get out of services will be charged with $150. For speeding over limit driver will be charged $100. Contractor whose truck gets out of service will be charged $150.

# V INDEPENDENT CONTRACTOR'S WARRANTY REPRESENTATION

1) INDEPENDENT CONTRACTOR warrants and represents that it is the owner of every unit of leased equipment and that CARRIER shall have possession of the equipment during the term of this lease. INDEPENDENT CONTRACTOR further warrants that every such unit of leased equipment shall be in safe mechanical and operating condition, free of defects, properly licensed and in full compliance with the Motor Carrier Regulations of the U.S. Department of Transportation (D.O.T.) and all other applicable laws, regulations and ordinances of Federal, State or Municipal authorities having jurisdiction as of the date it is delivered to CARRIER, and shall be maintained as such throughout the term of this Lease.

2) INDEPENDENT CONTRACTOR further warrants and represent that the driver(s) he shall supply to perform services for CARRIER shall be properly licensed and qualified under all applicable laws and regulations throughout the period of this Lease.

Initial *N. C*

## VI OPERATION AND MAINTENANCE EXPENSES

INDEPENDENT CONTRACTOR agrees to pay the entire cost of operating and maintaining the leased equipment throughout the term of this Lease. INDEPENDENT CONTRACTOR'S obligation shall include, buts hall not be limited to the following expense items:

1) All wages, payroll taxes and other payments of INDEPENDENT CONTRACTORS' employment of authorized drivers or other labor.
2) All costs of Bobtail Liability and Physical Damage Insurance. Proof of the insurance must be provided to CARRIER prior to completion of the Lease.
3) All expenses of fuel and lubrication and all expenses of maintenance and repair of the leased equipment.
4) All Fuel and Highway Use taxes, all highways, bridge ferry and other tolls, and all expenses of acquiring and maintaining current vehicle base plates and licenses on leased equipment.
5) All fines for traffic violations and any other fees, penalties, fines or taxes that may be assessed against the equipment or services provided by the INDEPENDENT CONTRACTOR, his agent or employees.
6) INDEPENDENT CONTRACTOR shall be solely responsible for all expenses incurred in the procurement of background checks, physical examinations and drug tests in accordance with DOT Federal Motor Carrier Safety Regulations 391.41.
7) Drug tests are required annually and/or at random as required by CARRIER.
   a) Background check of CDL license records must be completed before any driver will be allowed to work under the terms of this Lease.

8) CARRIER shall obtain and pay for Road Use and Fuel Tax permit for each unit of leased equipment from each of the states in which it operates. INDEPENDENT CONTRACTOR agrees to provide CARRIER with quarterly vehicle maintenance reports on each unit of leased equipment provided to CARRIER hereunder. The reports shall specify all maintenance and repairs preformed on the vehicle and shall be paid receipts.

## VII MAINTENANCE REPORTS

1) To enable CARRIER to fulfill its obligation under D.O.T. regulation to monitor the inspection, maintenance and repair of equipment under its authority, INDEPENDENT CONTRACTOR agrees to provide CARRIER with quarterly vehicle maintenance reports on each unit of leased equipment to CARRIER hereunder. The reports shall specify all maintenance and repairs preformed on the vehicle and shall be supported by paid receipts.
2) INDEPENDENT CONTRACTOR must submit a Vehicle Inspection Report prior to completion of this Lease Agreement Subsequent inspection must be submitted to CARRIER by the 10th of January, April, July, and October for the preceding calendar quarter. CARRIER shall have the right to remove any unit of leased equipment from service when unsafe conditions are found by D.O.T. Inspection or otherwise.
3) INDEPENDENT CONTRACTOR not submitting the Quarterly Vehicle Inspection Report will be put a no-load list and fined $100 for non-compliance.

## VIII MINIMUM TRIPS

CARRIER does not guarantee, warranty or represent to INDEPENDENT CONTRACTOR that any minimum number trips will be available to INDEPENDENT CONTRACTOR during the term of this Agreement. However, all good faith effort of the CARRIER will be made to ensure as many trips as possible.

Initial *N - C*

## IX VEHICLE IDENTIFICATION

CARRIER will provide INDEPENDENT CONTRACTOR with all identification required by all applicable governmental authority; to be affixed to each vehicle listed in section XIV While such equipment is performing services for CARRIER pursuant to this Agreement. When the leased equipment is not being used to perform services for CARRIER, INDEPENDENT CONTRACTOR shall remove or completely cover all items of identification referring to CARRIER. Upon the termination of the lease, or in the event INDEPENDENT CONTRACTOR shall return all items of identification to CARRIER.

## X INSURANCE

The respective obligations of the parties concerning the purchase and maintenance of insurance are as follows:

1) CARRIER agrees to procure and maintain in full force Public Liability Insurance for bodily injury and property damage for the vehicle(s) leased hereunder, with a limit of $1,000,000 combined single limit for bodily injury and property damage in each accident. It is further agreed that this Public Liability Insurance shall not cover the operation of any unit of leased equipment while 1) The unit is used to carry property in any business other than the business of the CARRIER; 2) The unit is being used in the business of any person of organization other than the CARRIER; Or 3) it is being used for personal purposes.

2) CARRIER further agrees to provide cargo insurance covering operation of the leased equipment when being used to transport cargo under provisions of the Lease, and covering cargo walls or damage resulting from collision or upset of the equipment. The limits of coverage and the placement of the liability and cargo insurance shall be left to the sound discretion of the CARRIER, and the CARRIER shall named as the sole insured. If the INDEPENDENT CONTRACTOR desires any such insurance for his own protection or is dissatisfied with the type or amount of the coverage provided by the CARRIER, he is free to provide other, further or additional insurance at his own expense. INDEPENDENT CONTRACTOR will be responsible for any deductible amount for claims under the Public Liability and/or Cargo Insurance, when it is found to be the fault of the INDIPENDENT CONTRACTOR or his employees.

3) INDEPENDENT CONTRACTOR agrees to procure and pay full expense of Bobtail Insurance as well Physical Damage Insurance on each unit of the leased equipment.

4) These insurance are also available through CARRIER, if INDEPENDENT CONTRACTOR does not provide Evidence of both Bobtail and Physical Damage insurance on each unit bound by this Lease Agreement.

5) As required by Illinois State Law, INDEPENDENT CONTRACTOR must provide Proof of Workman's Compensation Insurance, covering himself as a driver if applicable, within 10 days of completion of this Lease Agreement. If Proof of Insurance is not provided within 10 days, INDEPENDENT CONTRACTOR may purchase such Policy, excluding himself from coverage from a qualified insurance agent at cost of $750 per year, due in full at the start of the Policy.

If INDEPENDENT CONTRACTOR hires drivers to operate his unit, INDEPENDENT CONTRACTOR must obtain his own Workman's Compensation claims under this Lease Agreement.

## XI CHARGEBACK ITEMS

In addition of the chargeback or withholding authority grated by INDEPENDENT CONTRACTOR to CARRIER elsewhere in this lease, INDEPENDENT CONTRACTOR agrees that CARRIER shall have the right to change against the any settlement owed under this Lease amounts sufficient to reimburse CARRIER for the following expenses which CARRIER may incur on behalf or in the name of INDEPENDENT CONTRACTOR:

Initial *N-C.*

1) Any fines or penalties imposed upon CARRIER as a result of violations by INDEPENDENT CONTRACTOR. Any losses or expenses incurred by CARRIER as a result of its inability to collect freight charges earned due to INDEPENDENT CONTRACTOR'S failure to properly complete and to submit paperwork and documents in a timely manner. Any loss or damage to property or cargo, or any other losses or expenses which CARRIER may incur or for which it may be held liable as a result of the INDEPENDENT CONTRACTOR'S CONDUCT.

2) All fines and penalties on overweight trailers, found to be the fault of the drivers negligence. Prior to withholding any settlement upon request, CARRIER shall provide INDEPENDENT CONTRACTOR with written explanation and itemization of the withholding to be made. Deductible amounts on claims against liability and cargo insurance policies when it is found to be the fault of the INDEPENDENT CONTRACTOR or his employees. Deductible amount is $1,000 for each occurrence.

3) INDEPENDENT CONTRACTOR agrees to pay all expenses for the permits, signs and registration ($500), if works with us for less than 6 months.

## XII ACCIDENT REPORTS AND LITIGATION

INDEPENDENT CONTRACTOR agrees that he will report to CARRIER by telephone immediately after the occurrence, any accidents, injuries, property damage, and cargo losses of any nature. A Police Report must be submitted to the CARRIER, along with a full, written Accident Report Form covering each occurrence, as required by I.C.C. and D.O.T regulations. INDEPENDENT CONTRACTOR agrees to place himself agents and attorneys at the service and disposal of the CARRIER during the length of this Lease and termination to assist the CARRIER in the defense of claims or suits arising out of any operations or conduct in which it engaged under the provisions of this Lease. INDEPENDENT CONTRACTOR also agrees that in all cases where a controversy arises with shipper or consignee concerning the responsibility for or amount of freight loss or damage. INDEPENDENT CONTRACTOR accepts any and all decisions and settlement made by CARRIER. The CARRIER agrees to exercise due diligence in making such decisions and settlements.

## XIII TERMINATION OF AGREEMENT

Upon termination of this Agreement, INDEPENDENT CONTRACTOR shall remove all CARRIER identification from the outside of unit, return all fuel cards, permits, decals. Upon return of these items. CARRIER will execute a written receipt for the return of said leased equipment to INDEPENDENT CONTRACTOR.

IN WITNESS HEROEF the INDEPENDENT CONTRACTOR and the CARRIER have caused this Lease to be subscribed by their duty authorized representatives:

BY:_____     Title

BY:_____     Title

Initial N-C

This Lease shall be executed in duplicate. INDEPENDENT CONTRACTOR shall keep one copy of the Lease on each unit of leased equipment during the period of the lease. CARRIER shall keep the original lease.

DATE OF AGREEMENT: _02/09/2011_          Initial: _C.J._

## XIV RECEIPT OF EQUIPMENT

### TRACTOR

MAKE: VOLVO

YEAR: 2005

BODY TYPE:

V.I.N. Serial# 4V4NC9GH45N388880

STATE/LICENSE IL

### TRAILER

MAKE:

YEAR:

BODY TYPE:

V.I.N. Serial#

STATE/LICENSE

## XV RECEIPT OF EQUIPMENT

CARRIER hereby acknowledges receipt of Equipment described above:

Signature of Carrier's Agent _[signature]_          Date: _02/09/2011_

## XVI RELEASE OF EQUIPMENT

**TO BE COMPLETED UPON TERMINATION OF AGREEMENT** INDEPENDENT CONTRACTOR hereby acknowledges receipt of the equipment in this Agreement:

INDEPENDENT CONTRACTOR _[signature]_ Date: _____

Initial _N-C._

RULES OF CONDUCT FOR ALL DRIVERS UNDER ITS LEASE AGREEMENT

1) All drivers must check in at 9:00a.m. And 9:00p.m.Each day to report their location expected delivery times and any problems encountered since the last check-in. A voice message must be left if no one is in the office, and no problems have occurred.Office:630-279-2220

2) All drivers must complete a Pre-Trip Inspection on the tractor and trailer, according to D.O.T. regulations. **BBS TRUCKING INC** must be informed of any problems noticed during the Pre-Trip inspection. In case of any truck or trailer equipment failures, the Company must be informed immediately 24 hours a day. The Company will not acknowledge any actions taken by the driver prior to informing the Company, and any equipment damage due to the neglect of the driver will be considered the responsibility of the driver, and will not be paid y the Company.

3) If a load requires refrigeration, the driver must check the condition of the trailer every eight hours, including temperatures required by the shipper, and fuel level in the trailer. The Company will not be held responsible for damaged cargo, due to negligence or improper inspection. Any deducted charges against cargo liability will be withheld from INDEPENDENT CONTRACTOR'S settlement.

4) All drivers are required to keep a logbook up-to-date for each portion of a trip. All logbooks must be completed and turned in to the Company upon driver's return to the office and kept on the office and kept on file according to D.O.T. regulations. The driver, not the Company will pay any logbook violations. If a truck is ordered Out of Service due to a logbook violation, each driver will be fined $50 by the company. If a load is not picked up or delivered late, due to Police Order or any other reason, unless approved by the shipper and receiver, all late charges incurred by Company will be withheld from INDEPENDENT CONTRACTOR'S settlement.

5) All drivers must inspect the loading of a trailer, where allowed, and check weight at the nearest scale. If the load appears to be overweight, the driver must inform Company immediately by phone, and return to original loading area for proper weights. The Company will not pay Citations due to overweight violations.

6) During loading, the driver must pay attention to the condition of the load, and the number of pallets placed on the trailer. If the driver observes any damage such as bad condition of the product, broken boxes, spilling etc., the driver should stop the loading process and immediately inform **BBS TRUCKING INC.** If **BBS TRUCKING INC.** approves damaged load, the driver must note the damage on the Bill of Lading, and request the signature of the shipper's representative, as proof and acknowledgement of previous damage to the load.

Initial *N.C.*

7)  At all times,. Drivers must be courteous and respect all rules and regulations of our customers, other drivers, and offices of all regulatory agencies.
8)  Cause for immediate discharge include the following:
    -Dishonesty
    -Immoral conduct while on duty
    -Fighting
    -Possession of narcotics, or being under the influence of alcohol while on duty
    -Failure to immediately report an accident which results in injury or property damage
    -Failure to carry out instructions or a direct order of a supervisor
    -Theft
    -Participating in any activities that interfere with Company operation

**I HAVE READ AND UNDERSTAND THE COMPANY RULES AND HEREBY AGREE TO FOLLOW THEM**

Signature: _____  Date: 2/9/11

Initial. N. C.